## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**NIA GLENN-LOPEZ,**
**Executrix,**

           **Plaintiff,**

**v.**                                    **2:17-cv-02147-STA-cgc**

**JASON S. MANGRUM,**
**BO LUXMAN,**
**BENJAMIN WILLIAM PERRY,**
**HEATHER HOWELL WRIGHT,**
**JOHN W. STUART,**
**KEN BIANCO,**
**OCWEN LOAN SERVICING, LLC,**
**DEUTCHE BANK NATIONAL**
**TRUST CO., and AMERIQUEST**
**MORTGAGE SECURITIES, INC.,**

           **Defendants.**

---

### REPORT AND RECOMMENDATION ON *IN FORMA PAUPERIS* SCREENING PURSUANT TO 28 U.S.C. § 1915 AND CERTIFICATION OF APPEALABILITY PURSUANT TO RULE 24 OF THE FEDERAL RULES OF APPELLATE PROCEDURE

---

Before the Court pursuant to Administrative Order 2013-05[1] is Plaintiff Nia Glenn-Lopez's *pro se* Complaint.[2] [3]  As Plaintiff is proceeding *in forma pauperis*, Plaintiff's Complaint must be screened pursuant to 28 U.S.C. Section 1915 ("Section 1915").  The Section 1915 screening has been referred to the United States Magistrate Judge for Report and Recommendation.  For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint be DISMISSED pursuant to Section 1915 for failure to state a claim upon which relief may be granted.

## I. Introduction

This case arises out of Plaintiff's Complaint that she suffered an illegal foreclosure upon her real property located at 1834 Kendale Avenue, Memphis, Tennessee, 38114.  (Compl. at 3, § III.A, 4 ¶¶ 14, 45 & 32, ¶ 83).[4]  Plaintiff alleges that her mortgage note made in favor of the original creditor, Bedford Home Loans, Inc. ("Bedford"), has already been discharged.  (*Id.* at 19, ¶ 19).  However, Plaintiff alleges that she was sent a "Default/Delinquency letter" from Ocwen Mortgage

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639.  All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

[2] Plaintiff's Complaint contains two documents—a Complaint and an Amended Verified Complaint for Damages.  As Plaintiff is proceeding *pro se* and as such claims must be liberally construed, *see*, *infra*, Section II, it is RECOMMENDED that the document in its entirety be construed as Plaintiff's Complaint.

[3] Plaintiff styled her Complaint as filed by "Nia Glenn-Lopez, Executrix, Nia Glenn-Lopez Estate."  (Compl. at 1).  The Clerk recorded Plaintiff as "Nia Glenn-Lopez, Executrix."  However, Plaintiff's alleged status as an executrix of an estate bearing her same name is unclear.

[4] Although it is not clear, it appears that the property at issue is located at 1834 Kensdale Avenue in Memphis, Tennessee.  (*Id*. at 3, § III.A & 32, ¶ 3).

Servicing, LLC[5] on June 24, 2014. Plaintiff alleges that the foreclosure was initiated on February 14, 2015 by public advertisement and that she was notified thereof by Jason Mangrum ("Mangrum") on February 16, 2015. (*Id*. at 10, ¶ 40). Plaintiff alleges that Defendant Deutsche Bank National Trust Company ("Deutche Bank") was awarded possession of her property by court order on July 10, 2015. (*Id*. at 11, ¶ 43). Plaintiff alleges that none of the Defendants have the legal right to collect any sum of money from her because no sum is owed by her. (*Id*. at 23, ¶ 40). Plaintiff further alleges that Deutche Bank, Ameriquest Mortgage Securities ("Ameriquest"), and Ocwen Loan Servicing, LLC ("Ocwen") unlawfully notified credit reporting agencies of her debt without expressed written consent. (*Id*.)

As Defendants, Plaintiff has named the following: Ocwen, who Plaintiff alleges "purports to be a 'Loan Servicer' for Plaintiff's alleged mortgage"; Ameriquest, and Deutsche Bank, who Plaintiff alleges act as "Banking, Investment, and Financial" companies for one another; Attorney Mangrum of the law firm Mackie, Wolf, Zietz, & Mann, PC; Attorneys Benjamin William Perry ("Perry") and Heather Howell Wright ("Wright") of the law firm Bradley Arant Boult Cummings, LLP; and, Ken Bianco ("Bianco") and John W. Stuart ("Stuart"), who it appears Plaintiff alleges played some role in the mortgage and foreclosure process but whose employment and roles are unknown. (Compl. at 12-13, ¶¶ 7-14).

As causes of action, Plaintiff asserts the following: (1) that Ameriquest, Ocwen, and Deutsche Bank be ordered to provide an account "for monies purportedly owed . . . and payments made by Plaintiff" (*Id*. at 24, ¶ 46); (2) that Ameriquest, Ocwen, Deutche Bank, Mangrum, Perry, and

---

[5] "Ocwen Mortgage Servicing, LLC" is not the named Ocwen defendant. It is unclear to the Court whether Plaintiff is alleging that another Ocwen company took this action or whether Plaintiff intended to name the Ocwen defendant.

Wright violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (*Id*. at 25, ¶¶ 49-; (3) that "Defendants" violated Tennessee Code Annotated § 62-20-102(3) and § 62-20-115(b)(5), which Plaintiff refers to as the "Tennessee Fair Debt Collection Practices Act," but which is officially titled the Tennessee Collection Service Act ("TCSA"); (4) that Defendants violated the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-104 ("TCPA"); (5) that Ocwen, Deutche Bank, and Ameriquest committed invasion of privacy by illegally obtaining Plaintiff's consumer credit reports; (6) that Ocwen, Deutsche Bank, and Ameriquest violated 18 U.S.C. § 245; (6) that Ocwen, Deutsche Bank, and Ameriquest violated 42 U.S.C. § 1983 by depriving Plaintiff of his rights under Article 1, Sections 17 and 21 of the Tennessee Constitution; (7) that Ocwen, Deutsche Bank, and Ameriquest violated 42 U.S.C. § 1985 by conspiring to interfere with her civil rights; (8) that Ocwen, Deutsche Bank, and Ameriquest "induced and produced any and all contracts they allege exist . . . through fraud, coercion, misrepresentation, and non-disclosure"; and, (9) that Ocwen, Deutsche Bank, and Ameriquest have committed grand larceny against the estate.

## II. Proposed Analysis

Pursuant to Section 1915, in proceedings *in forma pauperis*, notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429

U.S. 97, 106 (1976)).  However, "the lenient treatment generally accorded to pro se litigants has

limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d

108, 110 (6th Cir. 1991)).  The basic pleading essentials are not abrogated in pro se cases.  *Wells*

*v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  A pro se complaint must still "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Barnett v.*

*Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal

quotations and emphasis omitted).  District Courts "have no obligation to act as counsel or

paralegal" to pro se litigants.  *Pliler v. Ford*, 542 U.S. 225, 231 (2004).  District Courts are also

not "required to create" a pro se litigant's claim for him.  *Payne v. Secretary of Treasury*, 73 Fed.

Appx. 836, 837 (6th Cir. 2003).

### A.  FDCPA

The Fair Debt Collection Practices Act ("FDCPA") was passed by Congress to protect

consumers from "abusive, deceptive, and unfair debt collection practices by many debt collectors."

15 U.S.C. § 1692(a).  The three elements of a Section 1692 claim are as follows: "'(1) the plaintiff

has been the object of collection activity arising from consumer debt, (2) the defendant is a debt

collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission

prohibited by the FDCPA.'" *Perkins v. Aargon Agency, Inc.*, No. 13–cv–13617, 2013 WL

6474294 at *2 (E.D. Mich. Dec. 10, 2013) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355,

1360–61 (S.D. Fla. 2000)).  Conduct prohibited by the FDCPA includes harassment of debtors,

making false or misleading statements, engaging in unfair or unconscionable collection practices,

and providing false forms. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f, 1692j.

The courts of this Circuit evaluate FDCPA claims using the objective "least sophisticated consumer" standard. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006). That standard, while more lenient than a reasonable person standard, presumes at least some degree of reasonableness on the part of the consumer, and does not countenance "bizarre or idiosyncratic interpretations of collection notices." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

With respect to the first element, the FDCPA broadly defines "debt" covered by the Act as follows:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). A home mortgage secured by a promissory note is considered by courts to fall within that definition. *League v. Fed. Nat'l Mortg. Ass'n.,* No. 2:15-CV-2047-SHL-TMP, 2015 WL 12826636, at *4 (W.D. Tenn. Sept. 24, 2015) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216–17 (11th Cir. 2012)).

Upon review, Plaintiff has only conclusorily alleged that she was the "object of collection activity arising from consumer debt" by Ocwen. Although Plaintiff's allegations are not entirely clear, it appears that she initially obtained a mortgage from Bedford. Plaintiff further alleges that Ocwen is now her Loan Servicer and that Ameriquest and Deutsche Bank demanded "alleged debt that was due immediately to be paid in full." (Compl. at 21, § 29). As to Mangrum, Wright, and Perry, it appears that Plaintiff contests their role as attorneys assisting in the legal action, namely the foreclosure and collection efforts, against her. Specifically, Plaintiff alleges that Mangrum, Wright, and Perry are "liable for attempting to collect fees, interest, and expenses from Plaintiff

6

that are not authorized by any agreement or permitted by law, in violation of the FDCPA" and that Mangrum specifically knew that he was "not entitled to collect on the alleged debt." (Compl. at 26, ¶¶ 55, 57).

With respect to whether these Defendants are debt collectors defined by the FDCPA, taking Plaintiff's Complaint as true, Ocwen acts as her "loan servicer" and "[d]ebt collector against the Plaintiff." (Compl. at 11, § 41). Plaintiff does not allege precisely what role either Ameriquest or Deutsche Bank played in the debt collection, although she briefly states that they are "assigned creditor[s]." Thus, Plaintiff has only conclusorily alleged that Ocwen, Ameriquest, and Deutsche bank are debt collectors, as their roles are not clear.

With respect to the attorney-Defendants, Plaintiff does not allege precisely how Mangrum, Wright, and Perry are debt collectors; however, "an attorney who regularly files legal actions for the purpose of collecting debts on behalf of a client is not a 'debt collector' within the meaning of the FDCPA," as it is a "purely legal task." *See Green v. Hocking*, 792 F. Supp. 1064, 1066 (E.D. Mich. 1992). Thus, Plaintiff's FDCPA claims against Mangrum, Wright and Perry fail to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

With respect to the final prong of her FDCPA claim, Plaintiff does not allege any facts, if taken as true, that would give rise to a plausible claim that Ocwen, Deutsche Bank, and Ameriquest engaged in any acts or omissions prohibited by the FDCPA. For Plaintiff to adequately plead such a claim, her claim that her mortgage obligations were extinguished, or the assignments of her mortgage were invalid, must be alleged with sufficient facts. Plaintiff's Complaint fails to do so. Plaintiff merely states that it was "discharged" with no explanation of why she contends that is the case. Accordingly, it is RECOMMENDED that Plaintiff's FDCPA claim fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

### B. Accounting

Plaintiff further demands an accounting, stating that because Ocwen, Ameriquest, and Deutsche Bank purport to be her "assigned creditor," they have a "duty to properly account for monies purportedly owed to Defendants and payments made by Plaintiff." (Compl. at 24, ⁋ 47). Plaintiff alleges that the "amount of money paid or claimed still owed to Defendant[s] is unknown to Plaintiff and cannot be determined without verified accounting." (*Id*. ⁋ 47). Thus, Plaintiff requests a written accounting of "all sums allegedly due under the terms of the alleged written contract (if any), and provide an explanation of each amount due . . . ." (*Id*. at 25, ⁋ 48).

Plaintiff has not cited any specific statutory authority granting her the right to an accounting. In light of her *pro se* status and her other claims under the FDCPA, it is RECOMMENDED that Plaintiff's request for an accounting be construed as substantially similar to a claim seeking verification of debt under 15 U.S.C. § 1692g of the FDCPA. *See League*, 2015 WL 12826636, at n.11 (construing a *pro se* demand for accounting in conjunction with FDCPA claims as a Section 1692g claim)).

Section 1692g of the FDCPA outlines procedures debt collectors must follow in verifying a consumer's debt. *Id*. at *7. Subsection (a) requires debt collectors to provide debtors with a "notice of debt" within five days of an initial communication with a consumer in connection with the collection of any debt. *Id*. (citing 15 U.S.C. § 1692g(a)). Subsection (b) requires a debt collector to provide a debtor with verification of a debt and the name and address of the debtor's original creditor if a debtor disputes her debt within thirty days of receiving notice of debt. *Id*. (citing 15 U.S.C. § 1692g(b)).

Here, Plaintiff does not allege that she has not been properly notified of her debts. On the contrary, Plaintiff's Complaint states that Ocwen, Deutsche Bank, and Ameriquest have notified

her that she owes between $44,649.67 and $79,695.65.  (*See* Compl. at 11, ⁋ 41).  Rather than a

lack of notice of her debts, Plaintiff alleges that her debts have been discharged.  (*Id*. at 19, ⁋ 19).

Such allegations are insufficient to state a claim for relief pursuant to Section 1692(g).

Accordingly, it is RECOMMENDED that Plaintiff's demand for an accounting, as construed as a

request pursuant to Section 1692g, fails to state a claim upon which relief may be granted and must

be dismissed pursuant to Section 1915.

### C. *TCSA*

Next, Plaintiff alleges that "Defendants" violated the TCSA.  The first statutory provision cited

by Plaintiff as the basis of her allegations, however, contains only the definition of a "collection

service."  *See* Tenn. Code Ann. § 62-20-103(3).  The second statutory provision cited by Plaintiff

states that the State Collection Service Board, as created by Tennessee Code Annotated § 62-20-

104, may suspend, revoke or refuse to issue any license held under this chapter for "failing to

comply with any applicable state or federal law or regulation pertaining to the credit and collection

industry."  *See* Tenn. Code Ann. § 62-20-115(5).  Neither of these provisions give rise to a federal

cause of action against the named Defendants.  Accordingly, it is RECOMMENDED that

Plaintiff's TCSA claims fail to state a claim upon which relief may be granted and must be

dismissed pursuant to Section 1915.

### D. *TCPA*

Next, Plaintiff alleges that "Defendants" violated the TCPA by "using false representations

or deceptive means to collect a debt or obtain information concerning a consumer" in violation of

Tennessee Code Annotated § 47-18-104.  This statutory provision contains list of unfair or

deceptive acts are practices that are unlawful.  However, the "TCPA does not apply to claims

against a mortgage holder arising from a foreclosure."  *Eddie Sylvester Jones, Jr. v. Wilson &*

*Assocs., PLLC*, No. 12-2510-JDT-cgc, 2013 WL 12095137, at *5 (W.D. Tenn. Feb. 5, 2015) (citing cases). Further, as to the individual defendants, Plaintiff's Complaint contains no factual bases sufficient to plead a claim for relief under the TCPA against them. Accordingly, it is RECOMMENDED that Plaintiff's TCPA claim against all Defendants fails to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

### E. Invasion of Privacy

Next, Plaintiff asserts that Ocwen, Deutsche Bank, and Ameriquest committed the tort of invasion of privacy under Tennessee law. Tennessee law recognizes four types of invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and, (4) publicity that unreasonably places the other in a false light before the public. *Joe Burnette v. Joel Porter, Jr.*, No. W2010-01287-COA-R3-CV, 2011 WL 4529612, at *3 (Tenn. Ct. App. Feb. 15, 2012).

As factual basis for her invasion-of-privacy claim, Plaintiff alleges that Ocwen, Deutsche Bank, and Ameriquest illegally obtained her consumer credit reports. (Compl. at 28, ¶ 71). Plaintiff alleges that she did not provide her social security number to these companies and that she did not applied for credit or services with them. (*Id*. at 28-29, ¶¶ 70, 72, 73). Plaintiff states that she has a right to discovery to determine whether they "obtained her personal, private information" and "how that information was/is being used." (*Id*. at 29, ¶ 73).

Here, Plaintiff does not allege that her name or likeness were appropriated. Plaintiff also does not allege that unreasonably publicity was given to her private life or placed her in a false light before the public. Instead, Plaintiff appears to allege that Ocwen, Deutsche Bank, and Ameriquest intruded into her seclusion, which does apply not only to physical intrusions but also to any intrusions in a person's private affairs that would be highly objectionable to a reasonable

person. *Burnette*, 2011 WL 4529612, at *3. While illegally obtaining her social security number and credit reports could fall within this designation, the allegation again has to be read in the context of the entire Complaint. Specifically, Plaintiff admits that Ocwen is a "loan servicer" and Deutsche Bank and Ameriquest are "assigned creditors." She admits that they are attempting to collect unpaid mortgage payments from her, which she believes are discharged. In this context, a bare allegation that these entities have unlawfully obtained her social security number and credit reports, rather than possessing them during the assignment and servicing of her mortgage, cannot suffice to set forth a plausible claim for invasion of privacy. Accordingly, it is RECOMMENDED that Plaintiff's claim for invasion of privacy fails to state a claim upon which relief may be granted and must be DISMISSED pursuant to Section 1915.

### F.  18 U.S.C. § 245

Next, Plaintiff alleges that Ocwen, Deutsche Bank, and Ameriquest violated 18 U.S.C. § 245, which covers "federally protected activities." Specifically, Plaintiff alleges that these entities "have worked together and separately to willfully injure, intimidate, interfere with, or attempt to do so, by force or threat of force upon Plaintiff because of Plaintiff's activity as a participant in a federally protected program . . . ." (Compl. at 29, ¶ 77). Plaintiff believes that these entities perceived that she was a "targetable victim that could be successfully intimidated and forced out of her property through threatening paperwork and fraudulent/colorable legal process." (*Id.*) However, actions under Section 254 may only be undertaken by the United States with authorization from the Attorney General. 18 U.S.C. § 245(a)(1). No private right of action exists. *Id.* Accordingly, it is RECOMMENDED that Plaintiff's Section 245 claim fails to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

### G.  42 U.S.C. § 1983

Next, Plaintiff asserts that Ocwen, Deutsche Bank, and Ameriquest deprived her of her civil rights pursuant to 42 U.S.C. § 1983. Section 1983 requires that the party causing the deprivation of civil rights be acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. To successfully plead a Section 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). "A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs*, 316 F.3d at 590 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: (1) the public function test, which requires that the private entity exercise powers which are traditionally reserved for the state; (2) the state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state; and, (3) the nexus test, which requires a sufficiently close relationship, such as through state regulation or contract, between the state and the private actor so that the action may be attributed to the state. *Tahfs*, 316 F.3d at 591 (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

Here, Plaintiff seeks to pursue Section 1983 claims against private parties. Plaintiff does not allege any basis for this Court to conclude that their private conduct is fairly attributable to the state. Specifically, Plaintiff does not allege that these financial institutions were exercising powers traditionally reserved for the state, that the state encouraged or coerced these parties into action, or that any close relationship existed between the state and these organizations that was sufficient to attribute their conduct to the state. Accordingly, it is RECOMMENDED that Plaintiff's Section

1983 claim fails to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

### H. 42 U.S.C. § 1985

Next, Plaintiff asserts that Ocwen, Deutsche Bank, and Ameriquest violated 42 U.S.C. § 1985.  Section 1985 prohibits the following conspiracies to interfere with civil rights: (1) preventing an officer from performing duties, 42 U.S.C. § 1985(1); (2) obstructing justice or intimidating a party, witness, or juror, 42 U.S.C. § 1985(2); and (3) depriving persons of rights or privileges, 42 U.S.C. § 1985(3).  Unlike Section 1983, Section 1985 does apply to conspiracies involving private actors who deprive persons of their constitutional rights, such that the alleged deprivation need not occur at the hands of the state. *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 96-99 (1971); *United Bhd. Of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832 (1983)) (concluding that private parties may violate Section 1985(3)).

Here, Plaintiff alleges that Ocwen, Deutsche Bank, and Ameriquest, "along with their principals and agents, as a group of two or more, have worked together to conspire to prevent by force, intimidation or threat the Plaintiff from discharging her duty, right and privileges as the General Executor for NIA GLENN-LOPEZ estate."  (Compl. at 31, ⁋ 79).  Plaintiff further alleges that these Defendants, "[t]hrough the impersonation of authorized representatives through fraud, misfeasance, and malfeasance, . . . have hindered the administration of Justice for the Plaintiff, depriving the Plaintiff of security in her possessions and property directly or indirectly."  (*Id.*).

These bare, conclusory allegations, which state only that Plaintiff believes she was deprived of rights and privileges, are insufficient to plead a Section 1985 claim.  Specifically, if Plaintiff is attempting to bring a Section 1985(3) claim, this statute is a "purely remedial rather

than substantive statute; its aim is to provide an effective remedy for private conspiracies that violate otherwise existing rights." *Volunteer Medical*, 948 F.2d at 226. Plaintiff has not alleged any otherwise existing rights that Ocwen, Deutsche Bank, and Ameriquest have conspired to violate. If Plaintiff seeks to bring a Section 1985(2) claim based upon her reference to the hindrance of "administration of Justice," such a claim requires an obstruction of "federal judicial proceedings." *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Plaintiff's Complaint does not allege any such obstruction, but instead only argues that these Defendants have attempted to collect her mortgage payments and have initiated a foreclosure that she believes to be erroneous and unlawful. These allegations do not set forth a Section 1985(2) claim. Accordingly, it is RECOMMENDED that Plaintiff's Section 1985 claim fails to state a claim upon which relief may be granted and should be dismissed pursuant to Section 1915.

## I.   *Violation of Contract Law*

Next, Plaintiff alleges that Ocwen, Deutsche Bank, and Ameriquest violated contract law because they "induced and produced any and all contracts they allege exist between the Plaintiff and the Defendants through fraud, coercion, misrepresentation and non-disclosure." (Compl. at 31, ¶ 81). Plaintiff further alleges that these Defendants "have violated simple contract law by fraudulently trying to enforce and claiming breach of a non-existing contract being there has never been an acceptance by the Plaintiff of any offers presented by the Defendants." (*Id*. ¶ 82).

First, Plaintiff seeks to pursue a fraudulent-inducement claim. To establish a prima facie case of fraudulent inducement to contract, a plaintiff must show as follows: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; and, (5) an injury resulting

from the reliance. *Blackburn & McCune, PLLC v. Pre-Paid Legal Services, Inc.*, 398 S.W.3d 630, 644 (Tenn. 2010). Plaintiff has not alleged any false statement that coerced her to obtain a mortgage. Instead, Plaintiff admits that she obtained a mortgage from Bedford. Plaintiff appears to allege that the involvement of other parties, including by assignments, is unlawful; however, such an allegation does not adequately plead a fraudulent-inducement claim when, with even the most lenient construction given to Plaintiff's version of events, she voluntarily sought a mortgage to obtain real property. Plaintiff additionally states that Defendants are attempting to enforce a contract upon her that she did not agree upon. Yet, once again, Plaintiff's own allegations state that she obtained a mortgage from Bedford and that it was assigned to other holders of the mortgage. Accordingly, it is RECOMMENDED that Plaintiff's claim for violations of contract law, including fraudulent inducement to contract, fail to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

### J. Grand Larceny against the Estate

Next, Plaintiff alleges that Ocwen, Deutsche Bank, and Ameriquest "willfully and knowingly colluded to unlawfully take from the possession of the Plaintiff the property . . . [at] 1834 Kendale Ave." (Compl. at 32, ¶ 83). Under Tennessee law, grand larceny formerly constituted a criminal offense. *See* Tenn. Code. Ann. § 39-3-1103. Theft of property is now codified as a criminal offense under Tennessee Code Annotated Section 39-14-103. These criminal offenses may only be brought by a prosecuting authority and contain no private right of action. *See, e.g.*, *Hardy v. Tournament Players Club at Southwind, Inc.*, 513 S.W.2d 427, 441 (Tenn. 2017); *Hamilton v. Reed*, 29 Fed. Appx. 202, 204 (6th Cir. 2002). Accordingly, it is RECOMMENDED that Plaintiff's grand larceny claim fails to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

15

### K.  Other claims

Finally, Plaintiff mentions other provisions of law in the Complaint with no allegations in support thereof.  These references to violations of law do not comply with Rule 8(a) requiring a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Plaintiff further mentions violations of the Laws of Yahweh, Deuteronomy, and Exodus. The Court finds no cognizable claim in these allegations.  Accordingly, it is RECOMMENDED that the remaining portions of Plaintiff's Complaint fail to state a claim upon which relief may be granted and must be dismissed pursuant to Section 1915.

## III.  Certification of Appealability

Upon the recommendation that Plaintiff's Complaint be dismissed pursuant to Section 1915, the Court must further consider whether it should be recommended that Plaintiff be allowed to appeal this decision in forma pauperis, should she seek to do so.  Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Rule 24(a).  *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999).  Rule 24(a)(3) provides that, if a party has been permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis."  If the district court denies the pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  An appeal is not taken in good faith if the issue presented is frivolous.  *Id.*  It would be

16

inconsistent for the district court not to warrant service on the defendants but find that sufficient merit exists to support an appeal in forma pauperis. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).

The same considerations that lead to the recommendation that the District Court dismiss the complaint in this case for failure to state a claim upon which relief may be granted also compel the recommendation that an appeal would not be taken in good faith. Accordingly, it is recommended that the District Court certify pursuant to Rule 24(a) of the Federal Rules of Civil Procedure that any appeal in this matter by Plaintiff is not taken in good faith and that leave to proceed in forma pauperis on appeal be DENIED. It is further recommended that, if Plaintiff files a notice of appeal, he must pay the $455 appellate filing fee in full or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

**IV. Conclusion**

For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint be dismissed pursuant to Section 1915 for failure to state a claim upon which relief may be granted.

Signed this 31st day of January, 2019.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**